Arthur B. Stetson *vs.* Board of Selectmen of Carlisle & another.[1]

Middlesex. September 18, 1975. — February 25, 1976.

Present: Hennessey, C.J., Reardon, Braucher, Kaplan, & Wilkins, JJ.

*Practice, Civil,* Extraordinary review, Summary judgment. *Police. Constitutional Law,* Equal protection of laws. *Municipal Corporations,* Police, Officers and employees.

Where the plaintiff filed a petition for a writ of certiorari prior to the effective date of the new rules of civil procedure but the defendants' answer and motion for summary judgment were filed after that date, the plaintiff's right to relief would not be limited by the technicalities of a certiorari proceeding, but would be considered on the basis of the facts appearing in the parties' pleadings and affidavits. [757-759]

----

[1] The named defendants are Nancy P. Penhune, Daniel B. Bickford, and Alford S. Peckham, as they are members of the board of

General Laws c. 41, § 97, providing that in towns which have adopted it the selectmen may remove police officers at pleasure, does not violate equal protection of the laws even though police officers in municipalities governed by c. 41, § 97A, can be discharged only for cause after a hearing. [759-760]

A police officer in a town governed by G. L. c. 41, § 97, permitting selectmen to discharge a police officer at their pleasure, had no property interest in continued employment as an officer. [761-762]

Discussion of the limited right of an untenured government employee to procedural due process of law in connection with discharge. [762-764]

Allegations that there were rumors in a town accusing a police officer of adultery, that the selectmen knew of these rumors, that the police officer was discharged at this time, and that his reputation and his ability to find other employment suffered in consequence would, if taken as true, entitle the officer to notice of the reasons for his discharge and a hearing to provide an opportunity for clearing his name. [763-764]

PETITION for a writ of certiorari filed in the Superior Court on June 7, 1974.

A motion for summary judgment was heard by *Hallisey*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Francis E. Jenney* for the plaintiff.

*Frank B. Frederick* (*Neil G. Melone* with him) for the defendants.

WILKINS, J. The plaintiff appeals from the allowance of the defendants' motion for summary judgment. See Mass. R. Civ. P. 56, 365 Mass. 824 (1974). On June 7, 1974, he brought a petition for a writ of certiorari challenging his discharge from his position as a policeman for the town of Carlisle. He alleged that the selectmen's

selectmen of Carlisle, and Richard P. Hersey as he is chief of police of the town. A motion of the defendant Bickford to dismiss the proceeding as to him was allowed, apparently because he was no longer a member of the board. The plaintiff does not challenge the allowance of that motion in this appeal.

action in discharging him was arbitrary and capricious because it was not based on any substantial evidence and that he was denied his constitutional rights because he was discharged without an adequate hearing.

Before considering the question whether summary judgment should have been entered against the plaintiff, we must address a procedural question, not discussed by the parties, which arises in part because the plaintiff's petition for a writ of certiorari was filed before the new rules of civil procedure became effective on July 1, 1974, while the balance of the significant procedural events in this case occurred after July 1, 1974. Under our prior practice, when a writ of certiorari was sought, the judge's function was to look at the facts disclosed in the defendant's return and determine whether an error of law was apparent on that record (*Bennett* v. *Aldermen of Chelsea*, 361 Mass. 802, 807 [1972]; *Davidson* v. *Selectmen of Duxbury*, 358 Mass. 64, 66 [1970], and cases cited; *Morrissey* v. *State Ballot Law Comm'n*, 312 Mass. 121, 124-125 [1942]), unless there was an extension of the return (see *DiRado* v. *Civil Serv. Comm'n*, 352 Mass. 130, 132-133 [1967]), a challenge to the tribunal's jurisdiction (see *Morrissey* v. *State Ballot Law Comm'n*, 312 Mass. 121, 124-125 [1942]), or a challenge to statements of facts extrinsic to the return which bore on the court's exercise of discretion (see *Loranger* v. *Martha's Vineyard Regional High School Dist. School Comm.*, 338 Mass. 450, 453 [1959]). When the defendants' motion for summary judgment was presented in this case in the Superior Court, however, affidavits were filed in support of and in opposition to the allowance of that motion. The plaintiff filed an affidavit asserting facts not specifically alleged in his petition, which, if true, might support his claim that he had a constitutional right to notice of the reason or reasons for his discharge and to a hearing before the selectmen. Under our prior practice, such extraneous material would not have been considered in passing on a petition for a writ of certiorari because generally there

could be no contested issue of fact. The question for this court is how we should treat the record before us in passing on the propriety of the allowance of the defendants' motion for summary judgment.

The petition for certiorari was properly filed and does not lose its effect because the writ of certiorari was abolished by the new rules. Mass. R. Civ. P. 81 (b), 365 Mass. 841 (1974). Since July 1, 1974, relief in the nature of certiorari has been available pursuant to G. L. c. 249, § 4, as appearing in St. 1973, c. 1114, § 289. See St. 1973, c. 1114, § 351. If today a plaintiff files a complaint seeking relief in the nature of certiorari and, as a substantive matter, the case should be decided on the record developed before the governmental agency, the defendant's answer will constitute, in effect, a return, and a judge will decide the case on the basis of facts appearing in the answer. If, however, a plaintiff commences an action stated to be in the nature of certiorari when, in fact, the relief sought could not formerly have been obtained in a certiorari proceeding, but is substantively available, as for instance on a complaint for a declaratory judgment, the court should disregard the label and deal with the substance of the case.

If we were to consider this case solely on the basis of the defendants' answer and return, we might well conclude that there is no error on the face of the proceedings reported in that answer and return. However, the plaintiff's petition has been treated by the parties as seeking a determination of his rights on the basis of facts not appearing in the defendants' answer and return. We decline, therefore, to hold the plaintiff to the technicalities of a petition for a writ of certiorari and will discuss the plaintiff's right to the relief which he seeks in the context of the facts appearing in the pleadings and in the affidavits.

For reasons which appear later in this opinion, we believe that the plaintiff has shown that there are disputed facts which, if resolved in his favor, would entitle

him to a hearing before the selectmen concerning his discharge from the town's police force. We suggest that, in light of the views expressed in this opinion, the plaintiff should seek to amend his complaint to allege more precisely the facts on which he relies, to include a prayer for a declaratory judgment, and to set forth the precise relief which he seeks.

The plaintiff was dismissed as one of the two full time police officers of the town after two meetings between the plaintiff and the selectmen at which allegations against the plaintiff were discussed. No specific charge was made against the plaintiff. The reason given for his dismissal in a letter written on behalf of the selectmen was "unprofessional conduct and lack of candor with the Chief and the Selectmen." The plaintiff asserts that his dismissal was the result of false, retracted charges that he had committed adultery with a married woman living in the town. He was not confronted with any witness concerning that accusation. His affidavit implies that his reputation was damaged because the allegations against him, known to other residents of the town, were confirmed by his dismissal. He states further that he has been "deprived of continuing employment" as a police officer and "prevented from seeking employment" because "[i]n fact the Defendants are using retracted allegations as grounds for bad references."

In his petition, the plaintiff acknowledged that the town's police department was governed by G. L. c. 41, § 97, which provides that, in towns which have adopted it, police officers serve "at pleasure." He alleged that § 97 was unconstitutional because it denied him procedural due process and equal protection of the laws in violation of arts. 1, 10, 11, and 12 of the Declaration of Rights of the Constitution of the Commonwealth and the Fourteenth Amendment to the Constitution of the United States.

The plaintiff has no property interest in employment as a police officer by the town. Section 97 permits the

town's selectmen to discharge a police officer at their pleasure.[2]   There is no statutory requirement that a police officer in the town be advised of the reason for his discharge or that he be granted a hearing.[3]

As so construed, § 97 does not violate the Fourteenth Amendment's guaranty of equal protection of the laws. While police officers in municipalities governed by G. L. c. 41, § 97A, may be discharged only for cause after a hearing, different treatment under § 97 is acceptable constitutionally, because there is a basis for that different treatment reasonably related to the purposes which the statute seeks to accomplish. *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 545 (1974). *Maher* v. *Brookline*, 339 Mass. 209, 213 (1959). See *Commonwealth* v. *Leis*, 355 Mass. 189, 197 (1969). The provisions for hiring, firing, and supervision of police officers in a municipality with a large police force may be unwieldy and inappropriate in a small town such as Carlisle, which has only two full time officers. The choice allowed by §§ 97 and 97A is a reasonable way to facilitate the proper functioning of quite different police departments.

Our conclusion that the plaintiff has no property interest in continued employment by the town does not end the consideration of whether the plaintiff was entitled to notice and a hearing before the selectmen. The plaintiff relies on the statements in the opinion of the Supreme Court in *Regents of State Colleges* v. *Roth*, 408 U.S. 564,

---

[2] The town has accepted § 97, and G. L. c. 31, the civil service statute, is not in force in the town.

[3] A governmental employee does not have an absolute constitutional right to notice and a hearing before his discharge. *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577-578 (1972). *Cafeteria & Restaurant Workers Local 473* v. *McElroy*, 367 U.S. 886, 896 (1961). *DeCanio* v. *School Comm. of Boston*, 358 Mass. 116, 123-125 (1970), appeal dismissed sub nom. *Fenton* v. *School Comm. of Boston*, 401 U.S. 929 (1971). See *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 782 (1975).

573 (1972), that an untenured government employee is entitled to a hearing where the government makes a charge against him "that might seriously damage his standing and associations in his community," or where the goverment has "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."

The fact of discharge, standing alone, "is seldom serious enough to warrant a hearing." *Suarez* v. *Weaver*, 484 F.2d 678, 680 (7th Cir. 1973). Accord, *Buhr* v. *Buffalo Pub. School Dist. No. 38*, 509 F.2d 1196, 1199 (8th Cir. 1974). While dismissal for "any reason other than reduction in force is likely to be to some extent a reflection on . . . ability, temperament, or character" (*Medoff* v. *Freeman*, 362 F.2d 472, 476 [1st Cir. 1966]), "not every dismissal attains constitutional proportions." *Jenkins* v. *United States Post Office*, 475 F.2d 1256, 1257 (9th Cir.), cert. denied, 414 U.S. 866 (1973).

In order to constitute a deprivation of liberty based on serious damage to one's standing in the community, more must be shown than mere allegations of incompetence or inefficiency at a particular job. *LaBorde* v. *Franklin Parish School Bd.*, 510 F.2d 590, 593 (5th Cir. 1975). *Abeyta* v. *Taos*, 499 F.2d 323, 327 (10th Cir. 1974). *Jablon* v. *Trustees of Cal. State Colleges*, 482 F.2d 997, 1000 (9th Cir. 1973), cert. denied, 414 U.S. 1163 (1974). *Russell* v. *Hodges*, 470 F.2d 212, 217 (2d Cir. 1972). *Harnett* v. *Ulett*, 466 F.2d 113, 117-118 (8th Cir. 1972). Statements that continued employment is not in the best interests of the employer,[4] or that the employee is "anti-establishment,[5] lacks mature and professional judgment,[6]

---

[4] *Buschmann* v. *United N.Y. Sandy Hook Pilots' Ass'n*, 46 App. Div. 2d 391, 394 (N.Y. 1975).

[5] *Lipp* v. *Board of Educ. of Chicago*, 470 F.2d 802, 805 (7th Cir. 1972).

[6] *Lavin* v. *Board of Educ.*, 22 Ill. App. 3d 555, 557-558 (1974).

or is uncooperative or uncommunicative[7] are not enough. Even an accusation that a person has violated a particular statute is not necessarily enough. *Lake Michigan College Fed'n of Teachers* v. *Lake Michigan Community College*, 518 F.2d 1091, 1097 (6th Cir. 1975). Courts have found "a person's good name, reputation, honor, or integrity [to be] at stake . . . ." *Wisconsin* v. *Constantineau*, 400 U.S. 433, 437 (1971), in cases charging racial prejudice,[8] dishonesty or fraud,[9] unprofessional prescription of narcotics by a doctor,[10] and mental illness.[11]

The question before us then is whether facts properly asserted by the plaintiff, if true, support his claim that the principles expressed in the *Roth* opinion grant him the right to notice and a hearing. We think dismissal because of immoral, illegal conduct, such as adultery, entitles the employee to notice of the reasons for his discharge and a hearing on them, if those charges have been or are likely to be disseminated either to members of the public or to prospective employers. See *Buhr* v. *Buffalo Pub. School Dist. No. 38*, 509 F.2d 1196, 1199 (8th Cir. 1974); *Wellner* v. *Minnesota State Junior College Bd.*,

---

[7] *Jeffries* v. *Turkey Run Consol. School Dist.*, 492 F.2d 1, 2-3 (7th Cir. 1974). *Hawkins* v. *Linn County School Dist. No. 14*, 16 Ore. App. 41, 45 (1973).

[8] *Wellner* v. *Minnesota State Junior College Bd.*, 487 F.2d 153, 156 (8th Cir. 1973). *Birnbaum* v. *Trussell*, 371 F.2d 672, 679 (2d Cir. 1966).

[9] *Robison* v. *Wichita Falls & N. Tex. Community Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975). *Huntley* v. *North Carolina State Bd. of Educ.*, 493 F.2d 1016, 1019 (4th Cir. 1974). *McNeill* v. *Butz*, 480 F.2d 314, 319-320 (4th Cir. 1973). *Hostrop* v. *Junior College Dist. No. 515*, 471 F.2d 488, 494 (7th Cir. 1972), cert. denied, 411 U.S. 967 (1973).

[10] *Suarez* v. *Weaver*, 484 F.2d 678, 680 (7th Cir. 1973).

[11] *Lombard* v. *Board of Educ. of the City of N.Y.*, 502 F.2d 631, 637 (2d Cir. 1974), cert. denied, 420 U.S. 976 (1975). *Stewart* v. *Pearce*, 484 F.2d 1031, 1034 (9th Cir. 1973).

487 F.2d 153, 155, 156 n.3 (8th Cir. 1973). The plaintiff's affidavit states that the chief of police and some selectmen were told that the plaintiff was having an illicit relationship with a citizen of the town; that the chief prepared a report which he gave to the selectmen; that members of the board of selectmen received telephone calls concerning the plaintiff's actions; that the allegations against him were known by other residents of the town; that after his discharge some residents of the town circulated a petition on the plaintiff's behalf; that his reputation was greatly damaged when he was fired; that he obtained another police job "subject to references" but did not get the job because of poor references from a person of the town; that he believes that his prospective employer was informed by the chief of police of the town that he had lost his job because of his alleged conduct;[12] and that the defendants are using retracted allegations as grounds for bad references.

Viewing the plaintiff's affidavit and inferences which may be drawn from it in the light most favorable to the plaintiff (*Hub Associates, Inc.* v. *Goode,* 357 Mass. 449, 451 [1970]), and considering the facts set forth in the defendants' answer and return, we believe that there is a dispute concerning facts which are material to the issue whether the plaintiff was entitled to notice of the reason

---

[12]The plaintiff's statements of belief have no proper place in an affidavit for summary judgment. Rule 56 (e) of the Massachusetts Rules of Civil Procedure requires that an affidavit "be made on personal knowledge" and "set forth such facts as would be admissible in evidence." Under the identical provisions of Rule 56 (e) of the Federal Rules of Civil Procedure statements of belief are inappropriate in such an affidavit. *Automatic Radio Mfg. Co.* v. *Hazeltine Research, Inc.,* 339 U.S. 827, 831 (1950). 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2738, at 695-696 (1973). In acting on the defendants' motion for summary judgment, the judge did not have to accept an assertion of belief as an assertion of the truth of the fact believed. If a party does not move to strike the defective portion of an opponent's affidavit, in his discretion a judge may rely on the fact stated on belief. 10 C.A. Wright & A.R. Miller, *supra* § 2738, at 706.

for his discharge and to a hearing on those charges so as to have "an opportunity to clear his name." Specifically, the plaintiff has asserted sufficient facts which, if true, support his claim that he may be foreclosed from a "range of opportunities" for employment. *Regents of State Colleges* v. *Roth, supra* at 574. See *Adams* v. *Walker*, 492 F.2d 1003, 1009 (7th Cir. 1974); *McNeill* v. *Butz*, 480 F.2d 314, 320 (4th Cir. 1973); *Williams* v. *Civil Serv. Comm'n*, 66 N.J. 152, 157 (1974).[13]

The judgment for the defendants should be vacated, and there should be further proceedings in the Superior Court. If, in those further proceedings, the plaintiff establishes that he was entitled constitutionally to notice of any charges against him and to a hearing on them before the board of selectmen, consideration will have to be given to whether the proceedings already held before the board of selectmen were sufficient to satisfy the plaintiff's constitutional rights,[14] and whether, as the defendants claim, he waived any right to a hearing of a char-

---

[13] It is less clear that the facts, as the plaintiff recites them, show that a charge against him has been made public by the defendants which might damage his standing in the community. Others may know of the allegations against him, but this information may not have become known by others as the result of any action of the defendants. Nor do the facts recited by the plaintiff in his affidavit show that he was discharged because of his alleged adulterous conduct. The selectmen appear to have been continually nonspecific about the detailed reason or reasons for the plaintiff's discharge in any comments which appear in the record before us.

[14] The purpose of such a hearing is to provide the former employee an opportunity to clear his name, and a postdismissal hearing is sufficient. See *Arnett* v. *Kennedy*, 416 U.S. 134, 157 (1974) (Rehnquist, J.). If the plaintiff establishes that he has a constitutional right to a hearing, he should have notice of the specific charges, an opportunity to present witnesses, and, barring special considerations, an opportunity to cross-examine those who charge him with any wrongdoing on which the selectmen relied in discharging him. *Hostrop* v. *Junior College Dist. No. 515*, 471 F.2d 488, 495 (7th Cir. 1972), cert. denied, 411 U.S. 967 (1973). Of course, "[t]he purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his em-

acter different from that of the conferences which were held with the selectmen.

The order granting summary judgment is vacated, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

---

ployer ... . may remain free to deny him future employment for other reasons." *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 573 n.12 (1972). See *Garcia* v. *Daniel,* 490 F.2d 290, 292 (7th Cir. 1973).